UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CREELED, INC.,**

    **Plaintiff,**

v.                                                Case No: 8:22-cv-2379-MSS-TGW

**THE INDIVIDUALS,
PARTNERSHIPS AND
UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",**

    **Defendants.**

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Renewed Motion for Default Judgment Against Defendants. (Dkt. 47) Despite having been served, Defendants SY888, Juml, PotunfeiyigP, qingqingshishangguan, woinshopping, yuanhe369, zhengxuezhu, and zxiang40 (collectively, "Defendants") have failed to appear, answer, or otherwise respond to the Amended Complaint, which Plaintiff filed on November 3, 2022. (Dkts. 18, 23) The Clerk entered default on January 4, 2024. (Dkt. 46) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **ORDERS** as follows.

    **I.    BACKGROUND**

Plaintiff CreeLED, Inc., initiated this action against Defendants on October 17, 2022 for claims of trademark counterfeiting and infringement and false designation of

origin under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as unfair competition and trademark infringement under Florida common law. (Dkt. 1) Plaintiff filed the operative Amended Complaint on November 14, 2022. (Dkt. 13)

Plaintiff alleges it owns the 63 trademarks listed in the Amended Complaint, and alleges they are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "CreeLED Marks"). (Id. at ¶ 23) More than two-thirds of the trademarks listed contain the word "Cree". (Id.) The CreeLED Marks are used in connection with the design, marketing, and distribution of CreeLED lighting applications. (Dkt. 7-1 at ¶ 4) Plaintiff alleges Defendants use either exact copies or confusingly similar copies of the CreeLED Marks to advertise, distribute, sell, and/or offer for sale counterfeit and infringing goods through Internet-based commerce stores. (Dkt. 13 at ¶ 30) Attached to the Amended Complaint are webpage captures and photographs of CreeLED-branded products being sold via Defendants' e-commerce sites. (Dkt. 13-2)

On January 3, 2023, Plaintiff filed a Certificate of Service stating that on December 27, 2022, Defendants were served via email with copies of the Amended Complaint, Notice of Hearing, Issued Summons, and the Court's Order granting the temporary restraining order.[1] (Dkt. 29) Contemporaneously, Defendants were provided a link to a website on which Plaintiff maintained copies of all filings in this action. (Id.) To date, Defendants have not filed an answer or other responsive pleading

---

[1] Plaintiff obtained email addresses for Defendants through a third-party subpoena to Wish.com, one of the e-commerce stores Defendants used to advertise and sell the infringing goods. (Dkt. 29)

in this case. Upon Plaintiff's Motion for Clerk's Default, (Dkt. 44), the Clerk entered default against Defendants on January 4, 2024. (Dkt. 45) Pursuant to Federal Rule of Civil Procedure 55, Plaintiff now seeks entry of a final judgment of default against Defendants, an award of damages, and a permanent injunction. (Dkt. 47)

## II. LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment if it has jurisdiction over the claims and parties and there is a sufficient basis in the pleadings to support the relief sought. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[2] Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In defaulting, a defendant admits the plaintiff's well-pled allegations of fact. Id. at 1245. But "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., 515 F.2d at 1206.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543–44 (11th Cir. 1985). Damages may be awarded only if the record adequately reflects the basis for the award

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

via a hearing or the submission of detailed affidavits establishing the necessary facts. See id. at 1544.

### a. Jurisdiction

First, this Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because they involve a federal question. This Court also exercises supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they are part of the same case or controversy. Additionally, the Court has personal jurisdiction over Defendants because Defendants direct business activities toward and conduct business activities in the state of Florida by way of Defendant's e-commerce stores, which are accessible in Florida. Plaintiff alleges Defendants are foreign residents who purposefully avail themselves of the laws of Florida and the United States to engage in their infringing business activity. Thus, the Court finds it has jurisdiction over the claims and the parties.

### b. Liability

Plaintiff sets forth valid causes of action for Defendants' violation of the Lanham Act and Florida common law. First, to succeed on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must show (1) it owns a valid mark with priority, and (2) the defendant used a mark likely to cause consumer confusion with the plaintiff's mark. See FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 946 (11th Cir. 2023). The elements for a claim of trademark infringement under Florida common law are the same, Portionpac

4

Chemical Corp. v. Sanitech Sys., Inc., 217 F. Supp. 2d 1238, 1253 n.5 (M.D. Fla. 2002), as are those for a claim of false designation of origin under 15 U.S.C. § 1125(a). See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1503-04 (11th Cir. 1985); Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 935 n.16 (11th Cir. 2010); Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("It is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)."). Therefore, the Court may analyze these claims together. See Public Works Inc. v. Public Words Admin. LLC, 23 Civ. 00394, 2023 WL 5747883, at *4 (S.D.N.Y. Sept. 6, 2023) ("As the elements and standards for federal trademark infringment [sic] are the same as for . . . false designation of origin under federal law . . ., they may be analyzed together.").

In the Amended Complaint, Plaintiff pleads it owns the CreeLED Marks. (Dkt. 13 at ¶ 23) Additionally, Plaintiff alleges Defendants sell "similar if not identical CREE T6 LED flashlights using similar if not identical product descriptions and photographs." (Id. at ¶ 33) Plaintiff attaches to the Amended Complaint evidence that Defendants used CREE marks in the advertisement and sale of these goods on e-commerce websites. (Dkt. 13-2) Plaintiff notes the similarities between Defendants' marks and the CreeLED Marks, including: "identical photographs; identical, blocky wording overlayed on the photographs in black or red font; identical or similar usages of the CREE and XM-L marks; . . . and identical or similar 'specifications' listed in

5

the product description." (Dkt. 13 at ¶ 33) Plaintiff alleges Defendants' marks "are likely to cause and actually are causing confusion" with the CreeLED Marks, (Id. at ¶ 47), and the Court agrees with Plaintiff based on the evidence attached to the Amended Complaint.

Accordingly, the Court concludes the Amended Complaint states a claim for trademark infringement and false designation of origin under the Lanham Act as well as trademark infringement under Florida common law. By failing to defend against the Amended Complaint, Defendants are deemed to have admitted the well-pled factual allegations against them. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). Thus, the Court finds Plaintiff is entitled to default judgment against Defendants on its claims for trademark infringement and false designation of origin.

Next, to state a claim for unfair competition under Florida common law, a plaintiff must plead (1) deceptive or fraudulent conduct of a competitor, and (2) likelihood of consumer confusion. Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007); see also NorthStar Moving Holding Co. v. King David Van Lines, No. 19-cv-62176, 2021 WL 11960283, at *10 (S.D. Fla. Dec. 22, 2021) (stating that generally, the same facts which would support an action for trademark infringement also support an action for unfair competition). Plaintiff alleges "Defendants have misrepresented to members of the consuming public that the counterfeit goods being advertised and sold by them are genuine, non-infringing goods." (Dkt. 13 at ¶ 55) This conduct is sufficiently deceptive or fraudulent to satisfy

6

the first element of the claim. Am. Bank of Merritt Island v. First Am. Bank & Trust, 455 So. 2d 443, 445 (Fla. 5th DCA 1984). Plaintiff alleged Defendants' marks "are likely to cause and actually are causing confusion" with the CreeLED Marks. (Dkt. 13 at ¶ 62) The attachments to the Amended Complaint support Plaintiff's allegations. (See Dkt. 13-2) By failing to defend against the Amended Complaint, Defendants are deemed to have admitted the well-pled factual allegations. Eagle Hosp. Physicians, 561 F.3d at 1307. Thus, the Court finds Plaintiff is entitled to default judgment against Defendants on its claim for unfair competition under Florida common law.

    c. **Injunctive Relief**

Plaintiff requests the Court enter a permanent injunction against Defendants' use of the infringing marks. "Federal courts may grant permanent injunctions where infringement is found to have occurred [to] prevent further infringing use of a mark[.]" Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1242 (11th Cir. 2008); Chanel, Inc. v. besusmart.com, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) (noting courts have broad power to order injunctive relief to stop infringing conduct). "Injunctive relief is available in the default judgment setting." Id. at 1290 ("Defendants' failure to respond or otherwise appear makes it difficult for Plaintiff to prevent further infringement absent an injunction."). A plaintiff seeking a permanent injunction must show: (1) it has suffered an irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships between the plaintiff and defendant favors an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction. Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008)

(citing eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)).

First, Plaintiff has established an irreparable injury. In trademark infringement cases, a sufficiently strong showing of a likelihood of consumer confusion may, by itself, be sufficient to establish irreparable harm. Chanel, 240 F. Supp. 3d at 1290; General Motors Corp. v. Phat Cat Carts, Inc., 504 F. Supp. 2d 1278, 1287 (M.D. Fla. 2006) ("It is usually recognized in trademark infringement cases that . . . infringement by its nature causes irreparable harm."). In the Amended Complaint, Plaintiff alleges Defendant's use of the infringing marks causes consumers to believe Defendants' counterfeit goods are genuine CreeLED products "originating from, associated with, or approved by" Plaintiff. (Dkt. 13 at ¶¶ 31, 55, 61–62) Plaintiff's submissions establish a strong likelihood that consumers confuse Defendants' goods with genuine CreeLED goods, therefore, this Court finds Plaintiff has established it has suffered irreparable harm.

Next, Plaintiff has no adequate remedy at law because an award of money damages will not cure the injury to Plaintiff's reputation and goodwill resulting from Defendants' infringement. General Motors, 504 F. Supp. 2d at 1287 ("It is usually recognized in trademark infringement cases that there is not an adequate remedy at law to redress infringement[.]"). Third, a balance of the hardships between Plaintiff and Defendants favors issuing a permanent injunction. Without an injunction, Plaintiff will lose control of the CreeLED Marks and the quality of goods sold under its name because Defendants would continue their infringing conduct. Defendants, on the other hand, will suffer no legitimate hardship from an injunction prohibiting them

8

from advertising and selling counterfeit goods. See id. Finally, the public has an interest in preventing consumers from being misled by counterfeit products. See Angel Flight of Ga., Inc., 522 F.3d at 1209 (noting there is "a long line of trademark cases in which [the Eleventh Circuit] has explained the 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion").

The Court finds Plaintiff has shown it is entitled to a permanent injunction.

### d. Damages

Plaintiff has elected to recover an award of statutory damages of $50,000 against each Defendant under 15 U.S.C. § 1117(c). In support of its election, Plaintiff has submitted a declaration of A. Robert Weaver. (Dkt. 47-1) In the declaration, Mr. Weaver states that Wish.com, in response to a subpoena and the temporary restraining order, produced sales information for Defendants. (Id. at ¶ 8) Mr. Weaver states that "at least one Defendant [sold] in excess of 39,000 infringing units." (Id.) However, "[t]he information was produced subject to confidentiality objections that it not be filed with the Court absent a protective order[,]" so Mr. Weaver provides no further information about the number of infringing units Defendants sold. (Id.) It is unclear which Defendant sold these infringing units or the basis for the calculation of the number of units sold.

"District courts have wide discretion in awarding statutory damages." PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004). "An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement." Chanel, 240 F. Supp. 3d at

9

1292. Seven factors should be considered when determining the amount of damages for trademark infringement:

> 1) the expenses saved and the profits reaped; 2) plaintiff's lost revenues; 3) the value of the trademark; 4) the deterrent effect on others; 5) whether defendant's conduct was willful or innocent; 6) whether defendant has cooperated in providing particular information to assess the value of the infringing material; and 7) the potential for discouraging defendant.

Coach, Inc. v. Wagon Wheel Flea Mkt., Inc., No. 11-cv-00826, 2012 WL 13105459, at *2 (M.D. Fla. Apr. 30, 2012) (citation omitted).

Here, Plaintiff has offered no evidence to determine the first and second factors, presumably because the Plaintiff does not know how many infringing units have been sold. As to the third factor, Plaintiff alleges it has "expended substantial time, money, and other resources developing, advertising, and otherwise promoting the CreeLED Marks and products bearing the CreeLED Marks." (Dkt. 13 at ¶ 26) Accordingly, the third factor weighs in favor of awarding statutory damages. The fourth factor also weighs in favor of an award. Coach, 2012 WL 13105459, at *3 ("[T]he goal of deterring similar conduct by Defendant and others generally requires a significant award."). The fifth factor weighs in favor of awarding statutory damages because, by their default, Defendants concede the alleged infringement was willful. PetMed Express, 336 F. Supp. 2d at 1220. Defendants have not cooperated in this litigation at all, so the sixth factor has neutral weight in this analysis. Finally, like the goal of deterring other offenders, the seventh factor weighs in favor of awarding statutory damages due to the need to discourage Defendants from infringement in the future.

The Court finds Plaintiff's showing sufficient to support an award of statutory

damages, but insufficient to support an award in the amount Plaintiff requests. The Eleventh Circuit has stated that it "must be clear from the record either that a hearing was held that meaningfully informed the judgment of the court below or that the trial court utilized . . . 'mathematical calculations' and 'detailed affidavits.'" Adolph Coors, 777 F.2d at 1544 (11th Cir. 1985). On this record, the Court finds a nominal statutory award of $5,000 against each Defendant is supported by the evidence submitted to date, because insufficient evidence of the number of infringing sales or Defendants' revenue from those sales is before the Court at this time. See Roor Int'l BV v. Georgia's Smoke Shop LLC, No. 18-cv-2652, 2021 WL 2982462, at *3 (M.D. Fla. Apr. 16, 2021). Plaintiff is granted leave to file additional documentation in support of the factors mentioned above within fourteen days of this Order to the extent that it seeks a higher award. Failure to submit additional documentation will result in entry of judgment according to the Court's finding mentioned above. See, e.g., Adolph Coors, 777 F.2d at 1544 (noting damages may be awarded in a judgment of default only if the record adequately reflects the basis for the award).

### III.  CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Default Final Judgment, (Dkt. 47), is **GRANTED IN PART and DENIED IN PART**.

2. Plaintiff is entitled to recover $5,000.00 in statutory damages from each Defendant.

3. Defendants and their officers, directors, employees, agents, subsidiaries, distributors, and all persons acting in concert and participation with Defendants are hereby permanently **RESTRAINED, ENJOINED, and PROHIBITED FROM**:

   a. manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Plaintiff's trademarks, or any trademarks confusingly similar to those identified in Paragraph 23 of the Amended Complaint (the "CreeLED Marks"); (Dkt. 13-2)

   b. using the CreeLED Marks in connection with the sale of any unauthorized goods;

   c. using any logo and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

   d. falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

   e. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff;

f. using any reproduction, counterfeit, copy, or colorable imitation of the CreeLED Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

g. affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiff or in any way endorsed by Plaintiff;

h. otherwise unfairly competing with Plaintiff;

i. using the CreeLED Marks or any confusingly similar trademarks on e-commerce marketplace sites, domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms which are visible to a computer user or serves to direct computer searches to e-commerce stores, websites, and/or Internet businesses registered, owned, or operated by Defendants; and

j. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of

circumventing or otherwise avoiding the prohibitions set forth above.

4. Upon Plaintiff's request, the Internet marketplace website operators and/or administrators for the Internet-based e-commerce stores operating under the seller identification names identified in Schedule "A" attached to the Amended Complaint, (Dkt. 13-1), (the "Seller IDs"), including but not limited to AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, shall permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the CreeLED Marks via the e-commerce stores operating under the Seller IDs, and any other listings and images of goods bearing counterfeits and/or infringements of the CreeLED Marks associated with the same sellers or linked to any other alias seller identification names or e-commerce stores being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the CreeLED Marks; and

5. Upon Plaintiff's request, any Internet marketplace website operator and/or administrator who is in possession, custody, or control of Defendants' goods bearing one or more of the CreeLED Marks, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, eBay Inc., SIA

Joom, which operates the Joom.com platform, and ContextLogic, Inc., which operates the Wish.com platform, shall permanently cease fulfillment of and sequester those goods, and surrender the same to Plaintiffs.

6. All funds currently restrained or held on account for all Defendants by all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, SIA Joom, which operates the Joom.com platform ("Joom"), and PayPal, Inc. ("PayPal"), and their related companies and affiliates, are to be immediately (within 5 business days) transferred by the previously referred to financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms and by Defendants, to Plaintiff and/or Plaintiff's counsel in partial satisfaction of the monetary judgment entered herein against each Defendant. All financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not

limited to AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, and their related companies and affiliates, shall provide to Plaintiff at the time the funds are released, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained prior to release; and (iii) total funds released per Defendant to Plaintiff.

7. Interest from the date this action was filed shall accrue at the legal rate. See 28 U.S.C. § 1961.

8. The **CLERK** is directed to **RELEASE** the bond posted by the Plaintiff in the amount of $10,000.00.

9. Plaintiff is **GRANTED** leave to file **UNDER SEAL** documentation of the number of Defendants' infringing sales or any other evidence supporting a higher damages assessment within fourteen (14) days of this Order. If Plaintiff declines to expend further resources to augment the record, it should notify the Court within the same fourteen-day period, and the Court will direct the Clerk to enter final judgment in the amount set forth herein.

**DONE** and **ORDERED** in Tampa, Florida, this 4th day of April 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any pro se party